IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JON MICHAEL MAPOTE VILLENA,<br><br>Defendant. | CRIMINAL CASE NO. 15-00044-001<br><br>**REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE** |

Pending before the court is are a Petition for Offender Under Supervision and supporting declaration (collectively, the "Violation Petition"), filed by the U.S. Probation Office on May 16, 2022, a Supplemental Declaration filed on July 1, 2022, and a Second Supplemental Declaration filed on August 8, 2022. S*ee* ECF Nos.193, 203 and 207. Combined, these documents alleged the Defendant violated his supervised release conditions as follows:

1. Failed to inform the probation officer of a change in employment;
2. Admitted to the use of "meth" on March 26, 2022, and April 15, 2022, and tested positive for methamphetamine on a sweat patch applied on June 10, 2022;
3. Failed to report for eight drug tests (April 3, 4 & 6, 2022, June 19 & 20, 2022, and July 14, 20 & 29, 2022) and failed to report for sweat patch collection on three occasions (June 24, 2022, and July 2 & 11, 2022);
4. Failed to follow the instructions of the probation officer; and
5. Failed to participate in two substance abuse treatment sessions (June 29, 2022, and July 27, 2022).

On June 9, 2022, the Defendant pled *nolo contendere* to the allegation that he failed to inform the probation officer of a change in his employment and admitted all other allegations set forth in

the Violation Petition. *See* Minutes, ECF No. 202. On November 3, 2022, the Defendant entered admissions to all the allegations contained in the Supplemental and Second Supplemental Declarations. *See* Minutes, ECF No. 211. Having heard from the parties, the court now issues this Report and Recommendation as to an appropriate disposition for the supervised release violations.

## BACKGROUND

### A.  Conviction and Sentence

On February 12, 2016, the Defendant was sentenced to 10 months' imprisonment and three years of supervised release for Count 2 (Aiding and Abetting Access Device Fraud) and 24 months' imprisonment and one year of supervised release for Count 3 (Aiding and Abetting Aggravated Identity Theft), with the imprisonment terms to run consecutively and the supervised release terms to run concurrently. *See* J., ECF No. 59. The Defendant was also ordered to pay $12,377.71 in restitution, joint and several with his co-defendant, and perform 50 hours of community service. Among conditions of supervised released imposed, the Defendant was ordered to participate in a substance abuse treatment program that included drug testing and to not unlawfully possess or use a controlled substance. *Id.*

The Defendant's term of supervised release commenced on January 11, 2018.

### B.  Post-Conviction Conduct

On July 27, 2018, an informational report was filed, asserting that the Defendant was arrested on local theft related offenses and was given a notice to appear in the Superior Court of Guam on June 20, 2021. *See* ECF No. 79. No further information could be obtained by the probation officer, so no action was taken by the court. *See* ECF No. 81.

On August 4, 2020, another informational report was filed, alleging that the Defendant failed to report for drug testing on June 14, 2020, and admitted to drug use on June 13, 2020. *See* ECF No. 149. At the probation officer's request, the court took no action for the violations. *See* ECF No. 150.

On May 20, 2021, the Defendant's supervised release term was revoked, and he was sentenced to one day imprisonment, followed by 12 months of supervised release. *See* Revocation J., ECF No. 182. The basis for the revocation was the Defendant's admission to the use of drugs on

six occasions. *Id.* at 1 and Report and Recomm. at 1, ECF No. 177.

The Defendant's current term of supervised release commenced on May 20, 2021.

## CURRENT VIOLATIONS

**A. Filing of Violation Petition**

On May 16, 2022, the probation officer filed the instant petition and supporting declaration (together, the "Violation Petition") alleging that the Defendant committed the following violations of his supervised release conditions:

<u>Failure to notify probation officer about change in employment</u>

As a standard condition of supervised release, the Defendant was required to notify his probation officer at least 10 days prior to a change in employment, or within 72 hours of becoming aware of a change or expected change.

On March 23, 2022, the probation officer reviewed monthly supervision reports and noted that the Defendant indicated in his electronically submitted monthly report for February that he changed his employment from Cost-U-Less to Puff Supply (a vape supply company). The probation officer made several attempts to contact the Defendant about this change, but the Defendant could not be reached. Finally, the probation officer contacted the owner of Puff Supply, who reported that the Defendant was employed there but was asked to either quit or resign after the Defendant was found sleeping at work and repeatedly reported to work late.

The probation officer made further attempts to contact the Defendant and even reached out to the Defendant's stepfather to ask for his assistance in reaching the Defendant. The stepfather was asked to inform the Defendant to report to the probation office on March 28, 2022, to discuss his noncompliance.

On March 28, 2022, the Defendant reported to the probation office and admitted he quit his job at Cost-U-Less in January because of excessive absences. He then began working at Puff Supply but was asked to resign, claiming that it was because he "closed his eyes for a second in front of a customer." The probation officer counseled the Defendant about his failure to inform the probation officer timely about the change in his employment.

On May 9, 2022, Queenie Ayuyu from Cost-U-Less called the probation officer to confirm

that the Defendant was terminated because of excessive absences and tardiness.

<u>Admitted drug use</u>

At the noncompliance meeting with the probation officer held on March 28th, the Defendant admitted he relapsed on March 26, 2022, and signed an admission form that he used "meth" on said date. The Defendant was then processed for drug testing with the Lighthouse Recovery Center ("LRC") and was instructed to begin calling the UA line.

On April 11, 2022, the probation office instructed the Defendant to report to LRC for sweat patch application to monitor his drug use. He did so and was instructed by LRC staff to return on April 18, 2022, to have the sweat patch removed. The Defendant reported on April 18th as required, but brought the sweat patch in a plastic bag, claiming that it "fell off" earlier that day while he was in the shower. The patch was compromised and could not be analyzed by the lab. The probation officer then instructed the LRC staff to administer a urinalysis on the Defendant. The Defendant then called the probation officer and admitted that he used "meth" on April 15, 2022.

<u>Failed to report for drug testing</u> and <u>Failed to follow the probation officer's instructions</u>

On April 3, 2022, the Defendant failed to report to LRC for drug testing.

The probation officer sent the Defendant a text message the following day instructing him to report to LRC that day for a make-up test. The Defendant sent a text message back stating that he was experiencing body aches, nausea and diarrhea. The probation officer then instructed him to either report to the probation office before the end of the day or get a doctor's excuse. The Defendant failed to do either.

On April 6, 2022, the Defendant failed to report for drug testing at LRC. He also failed to call or report to the probation office the following day as required to discuss the noncompliance and be subjected to a make-up test.

Another sweat patch was applied on the Defendant on April 18, 2022, and he was instructed to report on April 25, 2022, for its removal. On April 25, 2022, the probation officer sent the Defendant a text message reminding him to report to LRC for the removal of the sweat patch and to also report to the probation office on April 26, 2022, at 10 a.m. for a meeting with the probation officer. The Defendant sent the probation officer a text message confirming his understanding of

his obligations. When the Defendant reported to LRC for the removal of the sweat patch, it was determined that the sweat patch had been compromised because the cotton patch was exposed and the adhesive covering was coming off. The sweat patch could not be sent for lab analysis. A new patch was applied, and he was instructed to return on May 2, 2022, to have the patch collected for analysis. The Defendant failed to report to the probation office on April 26th as instructed.

On April 28, 2022, the probation officer sent the Defendant a text message to report to the office the following day for a noncompliance meeting. On April 29, 2022, the Defendant sent a text message apologizing for missing his appointment on April 26th and stated that he was too sick to report that day for the scheduled appointment. The Defendant asked if he could instead report on May 2, 2022, after the sweat patch was removed.

On May 2, 2022, the Defendant failed to report to LRC and the probation office. At about 6:21 p.m. that evening, the Defendant sent the probation officer a text message apologizing for missing his appointment at LRC and at the probation office. The text message also stated that he would be going to the clinic to address ongoing congestion, sinus pressure and migraines and would provide a doctor's note if required. The probation officer instructed him to obtain a doctor's note.

On May 8, 2022, the probation officer sent the Defendant a text message instructing him to report to the probation office for a noncompliance meeting, but he failed to respond to the message.

On May 11, 2022, the probation officer again called the Defendant's stepfather and informed him that the Defendant had missed several appointment with the officer because of claimed illness. The Defendant's stepfather stated he had no knowledge of the Defendant being ill recently and claimed that the Defendant just picked him up from work and then dropped him (stepfather) home before leaving to hand out with friends.

The Defendant failed to report to the probation officer or provide any documentation verifying a medical condition that would prevent him from reporting to LRC or the probation office.

At the request of the probation officer, the court ordered that a summons issue for the Defendant to appear on May 24, 2022, to answer to the alleged violations.

**B.      Initial Appearance and Detention**

On May 24, 2022, the Defendant appeared before the court as summoned. *See* Minutes, ECF

No. 198. The court appointed the Federal Public Defender to represent the Defendant. *See* Appointment Order, ECF No. 200. Ms. Kottke asked that the matter be continued for two weeks so that John Gorman could discuss the matter further with the Defendant. The probation officer requested that the Defendant be detained since he faced mandatory revocation for failing to comply with drug testing. The probation officer further noted that the defendant had not been in contact with her office, with his last contact on May 2, 2022. The government supported the request for detention. The court then ordered that the Defendant be detained pending the next hearing, which the court set for June 9, 2022.

**C.     Partial Admissions**

On June 9, 2022, the parties again appeared before the court, and the Defendant pled nolo with regard to the allegation that he failed to inform the probation officer about a change in his employment status and entered admissions to the remaining violations. *See* Minutes, ECF No. 202. The probation officer recommended the Defendant be released that day so that he could show compliance and hopefully earn a more lenient sanction for the violations of his supervised release conditions. Defense counsel and the government agreed that it was a fair resolution, especially since the Defendant had been so close to completing his supervised release term. The court ordered the Defendant released from custody and encouraged him to comply with his supervised release conditions. The court scheduled arguments on disposition for August 9, 2022.

**D.     Filing of Supplemental Declaration**

On July 1, 2022, the probation officer filed a Supplemental Declaration, alleging the following additional violations:

<u>Positive sweat patch and Failure to report for sweat patch collection</u>

On June 10, 2022, a sweat patch was applied on the Defendant. It was removed on June 17, 2022, and sent for lab analysis, with another sweat patch applied. The report received on June 30, 2022, indicated the sweat patch applied on June 10, 2022 was positive for methamphetamine.

The Defendant was instructed to return on June 24, 2022, to have the sweat patch applied on June 17th removed and collected. He failed to report to LRC for its collection as directed.

<u>Failed to report for drug testing</u>

In addition to wearing sweat patches, the Defendant was scheduled to report to LRC four times per month for urinalysis testing. He failed to report for a scheduled drug test on June 19, 2022. The probation officer sent the Defendant a text message, and the Defendant responded that he did not hear his designated number or color on the drug testing phone message. The probation officer then instructed him to report the following day to LRC between 2-3 pm for a drug test. The Defendant failed to appear on June 20, 2022, for the drug test, and he failed to call the probation officer to provide an explanation for his noncompliance.

<u>Failed to attend substance abuse treatment</u>

The Defendant was scheduled to meet with Dawn Cruz at LRC on June 24, 2022, for an initial counseling session, but he asked that the appointment be rescheduled because he had a job interview that day. The appointment was then re-set to June 29, 2022, but the Defendant failed to appear for the appointment. The probation officer spoke with the Defendant on July 1, 2022, about his missed counseling appointment. He claimed he missed the June 29th appointment because he was at a job interview and stated that he sent a text message to Ms. Cruz to inform her he could not attend.

**E.     Filing of Second Supplemental Declaration**

On August 8, 2022, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 207, alleging the following further violations of the Defendant's supervised release conditions:

<u>Failed to report for drug testing and sweat patch collection</u>

On July 2, 2022, the Defendant failed to report to LRC to have his sweat patch collected as he had been instructed by the probation officer. On July 5, 2022, the Defendant reported to LRC, but the sweat patch chain of custody form had already been returned to the U.S. Probation Office, so he was instructed to report to there instead. Upon arrival at the U.S. Probation Office, the sweat patch was removed and discarded, and the Defendant was subjected to a urinalysis test, with negative results. A new sweat patch was applied on the Defendant and he was instructed to return to LRC on July 11, 2022, to have it collected.

The Defendant failed to report to LRC on July 11, 2022, to have the sweat patch collected. He also failed to report to LRC for urinalysis tests on July 14, 20 and 29, 2022.

Failed to attend substance abuse treatment

On July 12, 2022, the Defendant contacted his counselor Dawn Cruz to schedule a counseling session, with a follow up call on July 15, 2022. He was advised that Ms. Cruz was on personal leave and would contact him upon her return. On July 18, 2022, Ms. Cruz tried to reach the Defendant on his cell phone, but there was no answer. Another attempt was made on July 20, 2022, but again the Defendant did not answer. On July 26, 2022, Ms. Cruz was able to reach the Defendant, and an appointment was scheduled for the following day at 2:00 p.m.

On July 27, 2022, at about 1:30 p.m., the Defendant contacted Ms. Cruz and asked to reschedule the appointment because the Defendant had been "called into work." The session had to be rescheduled to the following day at 3:00 p.m.

**F.      Issuance of a Arrest Warrant, Defendant's Arrest and Further Admissions**

On August 9, 2022, the Defendant failed to appear for his court hearing. *See* Minutes, ECF No. 208. Mr. Gorman stated that the Defendant called him and said that he (the Defendant) was sick. In light of the recent violations alleged in the Second Supplemental Declaration, the court ordered that a warrant issue for the Defendant's arrest.

On October 5, 2022, the U.S. Marshals arrested the Defendant. *See* Warrant Return, ECF No. 209.

On October 6, 2022, the Defendant appeared before the court, and counsel asked to continue the matter for one month to further discuss the new allegations with the Defendant. *See* Minutes, ECF No. 210. Without objection, the matter was continued to November 3, 2022, and the Defendant was ordered to be detained pending the next hearing.

On November 3, 2022, the appeared in person before the court and entered admissions to all remaining violations alleged in the Supplemental and Second Supplemental Declarations. *See* Minutes, ECF No. 211. The parties presented their argument as to an appropriate sanction for the violations. The Defendant was ordered to remain in detention pending the final disposition hearing. Having reviewed the record herein and considered the parties' recommended sanction, the court now issues this Report and Recommendation.

///

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Pursuant to Section 3583(g), revocation is mandatory if a defendant fails to comply with drug testing. *See* 18 U.S.C. § 3583(g)(3).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Second Amended Violation Worksheet, the allegations are Grade C violations, with a guidelines range of 6-12 months of imprisonment, based on the Defendant's criminal history category of IV, followed by 23-29 months of supervised release. *See* Second Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 207-1.

This is the Defendant's second revocation proceeding. His underlying conviction on Count 2 was a Class C felony, so the Defendant faces a maximum revocation sentence of two years pursuant to Section 3583(e)(3).[1] His prior revocation sentence was for one day, with credit for time served. His supervised release term would have expired on May 19, 2022, but for the filing of the Violation Petition.

The probation officer recommended the court impose a sentence of six months' imprisonment – the low end fo the guidelines range – followed by 29 months of supervised release. The probation officer stated that because this is the Defendant's second revocation proceeding and in light of the numerous violations, the Defendant deserved a sentence that was longer than what he received for the first revocation proceeding.

The government concurred with the probation officer's recommendation. Counsel for the United States expressed concern with the excuses proffered by the Defendant regarding his missed

---

[1] The Defendant's conviction on Count 3 is a Class E felony, with a maximum revocation sentence of one year imprisonment.

drug tests and his inability to have the sweat patches promptly removed and analyzed by the lab.

Defense counsel asked for a sentence of time served, stating that such a sentence was adequate and not more than necessary to punish the Defendant for the violations. Mr. Gorman argued that, to the Defendant's credit, he was not committing any new crimes but was just generally noncompliant. Defense counsel claimed that the Defendant was interested in participating in outpatient treatment with WestCare Pacific Islands as soon as he was released. Finally, Mr. Gorman requested that the court impose a lower supervised release term, stating that the Defendant "has a history of screwing up just as his supervised release term is coming to a close."

Having heard the parties' positions, the court recommends a sentence of six months, the minimum under the guidelines, followed by 12 months of supervised release. This is the Defendant's second revocation proceeding, and the court already gave him a break during his first revocation proceeding when he was sentenced to time served (about one day) and 12 months of supervised release based the Defendant's admissions to using controlled substances on six occasions. Since then, the Defendant has committed more violations. He admitted to use of "meth" twice and tested positive for methamphetamine on a sweat patch once. However, he also failed to report for eight drug tests and failed to report for sweat patch collections three times. Furthermore, he failed to participate in two substance abuse treatment sessions. The court also gave the Defendant an opportunity to show his compliance when the court released him from custody on June 9, 2022, but the Defendant later failed to appear for a court hearing scheduled on August 9, 2022, prompting this court to issue a warrant for his arrest. The marshals did not arrest him until October 5, 2022. Another distinction between this revocation proceeding and the Defendant's first revocation is that last time the Defendant's counselor believed that further counseling was not necessary for the Defendant. Based on the Defendant's recent track record, he is in need of more intensive substance abuse treatment. A 12-month term of supervised release will assist the court and the probation officer in monitoring the Defendant's sobriety and compliance with his conditions. Similar to what the court stated in its prior Report and Recommendation, the court hopes "the Defendant's remaining 12 months of supervised release will proceed smoothly, but *in the event of a future violation, the probation officer can always petition the court to have the Defendant's supervised release term*

*lengthened*." Report and Recomm. at 5, ECF No. 177 (emphasis added). This should incentivize the Defendant to prove to the court that he can comply so that he can be down with supervised release in one year. The court believes the recommended sentence is reasonable, provides just punishment and affords adequate deterrence.

### RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge (1) accept the Defendant's admissions and plea of *nolo contendere* to all the violations noted above, (2) revoke the Defendant's supervised release term and (3) sentence him to six months' imprisonment, with credit for time served,[2] followed by 12 months of supervised release.

A disposition hearing shall be held on February 16, 2023, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ **Michael J. Bordallo**
    **U.S. Magistrate Judge**
**Dated: Jan 24, 2023**

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

[2] The Defendant was detained on May 24, 2022, and released on June 9, 2022, and then arrested on October 5, 2022, for failing to appear at his August 9th hearing and subsequently detained thereafter. He will have a total of 152 days of confinement credit as of the proposed disposition date of February 16, 2023.