IN THE DISTRICT COURT OF GUAM

| UNITED STATES OF AMERICA, | ) CRIMINAL CASE NO. 15-00044-001 |
|---|---|
| Plaintiff, | ) |
| vs. | ) **REPORT & RECOMMENDATION** |
| | ) **CONCERNING VIOLATIONS OF** |
| JON MICHAEL MAPOTE VILLENA, | ) **SUPERVISED RELEASE CONDITIONS** |
| | ) **IN A FELONY CASE** |
| Defendant. | ) |

Pending before the court are (1) a Petition for Offender Under Supervision and supporting declaration (collectively, the "Violation Petition"), filed by the U.S. Probation Office on May on May 15, 2023, which incorporated the allegations set forth in two Informational Reports (ECF Nos. 227 and 231) filed on April 10 and 20, 2023; (2) a Supplemental Declaration filed on June 8, 2023; (3) a Second Supplemental Declaration filed on June 16, 2023; (4) a Third Supplemental Declaration filed on July 5, 2023; (5) a Fourth Supplemental Declaration filed on July 14, 2023; (6) a Fifth Supplemental Declaration filed on August 4, 2023; (7) a Sixth Supplemental Declaration filed on November 14, 2023; and (8) a Seventh Supplemental Declaration filed on January 31, 2024. *See* ECF Nos. 239, 246, 249, 251, 253, 255, 265 and 272. Combined, these documents alleged the Defendant violated his supervised release conditions as follows:

1. Tested positive for methamphetamine on April 13, 2023, May 10, 2023, June 19, 2023, July 19, 2023, and January 8 and 12, 2024; admitted to the use of "meth" on June 12, 2023; admitted to illicit drug use on July 11, 2023;

2. Failed to appear for drug tests on May 5, 7 and 17, 2023, June 22 and 28, 2023, July 4 and 13, 2023, December 23, 2023, and January 11, 19, 23 and 30, 2024;

///

3. Failed to follow the instructions of the probation officer on May 17, 2023, and July 13, 2023;

4. Tampered with a sweat patch worn from December 26, 2023, to January 2, 2024;

5. Discharged from the Lighthouse Recovery Center ("LRC") residential treatment program on November 4, 2023, for noncompliance with the programs' rules and regulations;

6. Tested positive for methamphetamine on March 28, 2023;[1] and

7. Admitted to use of "amp/meth" on April 8, 2023.

The Defendant entered admissions to all the above violations. *See* Mins. (May 18, 2023), ECF No. 241, Mins. (June 9, 2023), ECF No. 247, Mins. (July 18, 2023), ECF No. 254, Am. Mins. (Oct. 17, 2023), ECF No. 270, Mins. (Nov. 21, 2023), ECF No. 269, and Mins. (Feb. 15, 2024), ECF No. 274. Having heard the parties' argument on an appropriate sanction, the court now issues this Report and Recommendation for the Chief Judge's consideration.

## BACKGROUND

**A.     Conviction and Sentence**

On February 12, 2016, the Defendant was sentenced to 10 months' imprisonment and three years of supervised release for Count 2 (Aiding and Abetting Access Device Fraud) and 24 months' imprisonment and one year of supervised release for Count 3 (Aiding and Abetting Aggravated Identity Theft), with the imprisonment terms to run consecutively and the supervised release terms to run concurrently. *See* J., ECF No. 59. The Defendant was also ordered to pay $12,277.71 in restitution, joint and several with his co-defendant, and perform 50 hours of community service. Among conditions of supervised released imposed, the Defendant was ordered to participate in a substance abuse treatment program that included drug testing and to not unlawfully possess or use

---

[1] The first Informational Report also alleged that the Defendant tested presumptive positive for methamphetamine on March 24, 2023, and thereafter signed an admission form that he used "meth" on March 20, 2023, but this was prior to his release from custody on March 22, 2023, when he began his supervised release term. *See* ECF No. 227. Mr. Gorman stated the Defendant would deny that specific allegation because the Defendant had not yet commenced his supervised release term when he allegedly smoked "meth" on March 20, 2023, so it should not be considered a violation. The court agrees with defense counsel, and not considering the March 24, 2023 positive drug test will not affect the Defendant's sentencing exposure for the violations.

a controlled substance. *Id.*

The Defendant's original term of supervised release commenced on January 11, 2018.

**B.    Post-Conviction Conduct**

On July 27, 2018, an informational report was filed, asserting that the Defendant was arrested on local theft related offenses and was given a notice to appear in the Superior Court of Guam on June 20, 2021. *See* ECF No. 79. No further information could be obtained by the probation officer, and no action was taken by the court. *See* ECF No. 81.

On August 4, 2020, another informational report was filed, alleging that the Defendant failed to report for drug testing on June 14, 2020, and admitted to drug use on June 13, 2020. *See* ECF No. 149. At the probation officer's request, the court took no action for the violations. *See* ECF No. 150.

On May 20, 2021, the Defendant's supervised release term was revoked, and he was sentenced to one day imprisonment, followed by 12 months of supervised release. *See* Revocation J., ECF No. 182. The basis for the revocation was the Defendant's admission to the use of drugs on six occasions. *Id.* at 1 and Report and Recomm. at 1, ECF No. 177.

On March 22, 2023, the Defendant's supervised release term was revoked a second time, and he was sentenced to time served (about six months and five days), followed by 12 months of supervised release. *See* 2nd Revocation J., ECF No. 223. The revocation was based on his failure to inform the probation officer of a change in employment, admission to the use of "meth" on two occasions, testing positive methamphetamine via sweat patch, failure to report for eight drug tests failure to follow the instructions of the probation officer, and failure to participate in two substance abuse treatment sessions. *Id.* and Report and Recomm., ECF No. 215.

**CURRENT VIOLATIONS**

**A.    Filing of Informational Reports**

On April 10, 2023, an Informational Report was filed alleging the Defendant tested positive for methamphetamine on March 24 and 28, 2023. *See* ECF No. 227. At the request of the probation officer, the court scheduled a progress hearing for April 27, 2023. *See* Order, ECF No. 228.

On April 20, 2023, the probation officer filed a second Informational Report alleging the

Defendant admitted to use of "amp/meth" on April 8, 2023. *See* ECF No. 231.

**B.   Progress Hearings**

On April 27, 2023, the Defendant appeared in court, and the court ordered the Defendant to be detained from April 27-30, 2023, as a sanction for the allegations in the Informational Reports and for testing presumptive positive the day prior to the hearing. *See* Am. Mins., ECF No. 235. The court set another progress hearing for May 11, 2023.

On May 11, 2023, the Defendant again appeared in court. *See* Mins., ECF No. 236. The probation officer reported that the lab analysis of the April 26th urine specimen came back negative. She further stated that the Defendant's urine sample collected on May 10, 2023, was sent to the lab for analysis. The probation officer stated the Defendant was attending treatment once a week on Mondays and was very engaged at his sessions. Unfortunately, the probation officer reported that she would be filing a formal violation petition. Without objection, the matter was continued to May 18, 2023.

**C.   Filing of Violation Petition**

On May 15, 2023, the probation officer filed a Violation Petition, *see* ECF No. 239, incorporating the alleged violations in the two Informational Reports and alleging the following new violations:

<u>Positive Drug Test</u>

On April 13, 2023m, the Defendant tested presumptive positive for methamphetamine. He denied illicit drug use, so the urine sample was sent for lab analysis. The lab result received on May 4, 2023, confirmed the presence of methamphetamine.

<u>Missed drug tests</u>

Defendant failed to report to LRC for drug tests scheduled on May 5 and 7, 2023. Defendant also failed to contact his probation officer after each missed test to discuss his noncompliance and schedule another drug test.

**D.   Answering to Allegations in Petition and Detention**

On May 18, 2023, the parties appeared in court again, and the Defendant entered admissions to all the allegations noted in the Violation Petition, with the exception of the March 24th positive

test. *See* Mins., ECF No. 241. According to defense counsel, said allegation should not be considered a violation since the Defendant allegedly admitted he used "ice" while still in custody on March 20, 2023, before he began his supervised release term on March 22, 2023. The probation officer reported that she was awaiting a lab report for a May 11th urine sample that was presumptive positive for methamphetamine and THC. Additionally, she noted that the Defendant failed to report for drug testing on May 17, 2023, as instructed, and that she had asked the Defendant to submit to a drug test prior to the hearing, but the Defendant admitted that he last used drugs two days ago. Mr. Gorman requested that these new allegations be set forth in a supplemental declaration so the Defendant could formally enter admissions or denials. Based on these recent allegations, the court ordered that the Defendant be detained. The court said it would consider releasing the Defendant at the next hearing, which the court set for May 24, 2023.[2] The court also scheduled a disposition hearing for July 20, 2023, and warned the Defendant to start making changes in his life or face the real possibility of serving six months in custody.

### E.  Filing of Supplemental Declaration

On June 8, 2023, the probation officer filed a Supplemental Declaration, *see* ECF No. 246, alleging the new violations as orally reported at the May 18th hearing. According to the declaration, on May 10, 2023, the Defendant submitted to a drug test at the probation office, which was presumptive positive for methamphetamine and THC. The Defendant claimed his last use of illicit substances was prior to his four-day detention from April 27-30, 2023. In light of the denial, the urine sample was set for lab analysis, and results received on May 30, 2023, confirmed the positive for methamphetamine but was negative for marijuana.

Additionally, on May 17, 2023, the probation officer called the Defendant on his cell phone, and the Defendant stated he was then meeting with his attorney. The probation officer instructed the Defendant to immediately report to the probation office after meeting with his lawyer, but the Defendant claimed his brother was waiting for him in the parking lot and he needed to go straight

---

[2] Because of Typhoon Mawar, the hearing was pushed back to June 9, 2023. *See* ECF Nos. 242 and 245.

home so his brother could use the car. Because of the transportation issue claimed, he was then instructed to report to LRC that afternoon for drug testing during their regular testing hours, but the Defendant failed to report as instructed.

**F.     Further Admissions and Release from Detention**

On June 9, 2023, the Defendant appeared before the court and entered admissions to all the allegations in the Supplemental Declaration. *See* Mins., ECF No. 247. The court agreed to release the Defendant and ordered him to meet with the probation officer and to get back into treatment. The court reminded the Defendant to appear for arguments on disposition, which the court had previously scheduled for July 20, 2023.[3]

**G.     Filing of Second, Third and Fourth Supplemental Declarations**

On June 16, 2023, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 249, alleging the Defendant reported to the probation office on June 13, 2023, and submitted to a drug test, which was presumptive positive for methamphetamine use. He admitted in writing that he ingested "meth" on June 12, 2023. The probation officer further reported that on June 15, 2023, the Defendant was assessed by Guam Behavioral Health and Wellness Center for substance abuse treatment. Dawn Cruz, his counselor, recommended that the Defendant be placed in LRC's Matrix and MRT group sessions, and the Defendant's treatment regime was initiated to include said treatment.

On July 5, 2023, a Third Supplemental Declaration was filed. *See* ECF No. 251. The probation officer alleged that the Defendant tested presumptive positive for methamphetamine use on June 19, 2023, but the sample was sent for lab analysis after the Defendant denied use of illicit drugs. Results received on June 30, 2023, confirmed the presence of methamphetamine in the sample. Additionally, the Defendant failed to report for drug tests on June[4] 22 and 28, 2023, and July 4, 2023. The Defendant failed to contact his probation officer to discuss his noncompliance and

---

[3] This hearing was later advanced to July 18, 2023.

[4] The probation officer's declaration inadvertently indicated that the missed drug tests were on "July 22 and 28, 2023," but this was orally amended by the probation officer at a subsequent court hearing.

submit to drug tests following each missed test date.

On July 14, 2023, the probation officer filed a Fourth Supplemental Declaration. *See* ECF No. 253. The probation officer asserted that on July 12, 2023, she contacted the Defendant on his cellular phone and instructed him to report to the probation office immediately after his counseling sessions, and he agreed. About 50 minutes later, the probation officer received a text message from the Defendant stating that his brother needed the car, which also had a slow leak in one of the tires, so the Defendant would not be able to report to the probation office. The Defendant also admitted in the text message that he "took one hit yesterday" (which the probation officer understood to mean he used illicit substances) after being clean for two weeks. He apologized and stated that he believed counseling was helping him. The probation officer sent a text message in response that instructed him to report to the probation office the following day (July 13, 2023). The Defendant responded "okay," but he failed to so report as instructed. Furthermore, the Defendant failed to appear for a drug test also scheduled on July 13, 2023.

**H.    Further Admissions and Entry in Residential Treatment**

On July 18, 2023, the Defendant appeared before the court and entered admissions to all the additional allegations in the supplemental declarations. *See* Mins., ECF No. 254. The probation officer stated that there was a bed available at LRC. The court informed the Defendant he had two options: participate in residential treatment or go to the detention center. The Defendant chose residential treatment. The court instructed the Defendant that if he voluntarily left the program or was terminated from the program before its completion, the Defendant must surrender to the U.S. Marshals Service. The court encouraged the Defendant to work hard to get the treatment he needed. A status hearing was thereafter set for August 29, 2023.[5]

**I.    Filing of Fifth Supplemental Declaration**

On August 4, 2023, the probation officer filed a Fifth Supplemental Declaration, *see* ECF No. 255, alleging the Defendant reported to LRC on July 18, 2023, and submitted to a drug test as

---

[5] This hearing was later continued to October 17, 2023, at the request of defense counsel. *See* ECF Nos. 257-260.

part of the intake process. The Defendant tested presumptive positive for methamphetamine use. The following day, he was subjected to a drug test under the U.S. Probation Office contract. the urine specimen was sent for lab analysis, and results received on August 4, 2023, confirmed the presence of methamphetamine in the specimen.

**J.    Further Admissions at Subsequent Court Hearing**

On October 17, 2023, the parties came before the court for a status hearing. *See* Am. Mins., ECF No. 270. The probation officer reported that the Defendant has been in the LRC residential program since July 18, 2023, and hoped to complete the program in January 2024. The probation officer stated that the Defendant tested negative on 14 consecutive drug tests since the last reported positive test shortly after his entry into program, that he is tested five times per month, and that he is excited about program. The Defendant entered an admission to the allegation in the Fifth Supplemental Declaration. The court congratulated the Defendant on his progress and set a status hearing for December 14, 2023.

**K.    Filing of Sixth Supplemental Declaration**

On November 14, 2023, the probation officer filed a Sixth Supplemental Declaration, alleging that the Defendant was discharged from the LRC residential treatment program on November 4, 2023, for noncompliance. Apparently, the Defendant was found with a cellular phone in his room, a violation that results in immediate discharge. The LRC staff prepared an outpatient treatment plan for the Defendant.

On November 7, 2023, the Defendant met with the probation officer. The Defendant stated he was embarrassed by his discharge, especially since he had made breakthroughs in his recovery and found comfort with the recovery community. The Defendant and the probation officer discussed his plan for weekly treatment sessions with LRC and attendance at NA meetings.

The probation officer requested that a summons issue for the Defendant to appear in court to determine whether he should remain released pending the final disposition hearing. The court granted the probation officer's request and advanced the status hearing to November 22, 2023.[6] *See*

---

[6] This was later moved to November 21, 2023. *See* Notice, ECF No. 268.

Order, ECF No. 267.

**L.     Subsequent Court Hearing**

On November 21, 2023, the Defendant appeared in court. *See* Mins., ECF No. 269. The probation officer reported that the Defendant was doing really well, testing negative on all drug tests, and this was the best she's ever seen him. She stated that the Defendant was very involved in the recovery community by volunteering with TOHGE[7] and was recently hired part-time with the Family Violence Coalition. Defense counsel confirmed that the Defendant is actively engaged in outpatient treatment. The Defendant reported that he had stable housing living with his parents. The Defendant entered admissions to the allegations in the Sixth Supplemental Declaration. The court set a hearing for arguments on disposition for January 23, 2024,[8] and allowed the Defendant to remain on release.

**M.     Filing of Seventh Supplemental Declaration**

On January 31, 2023, the probation officer filed a Seventh Supplemental Declaration, *see* ECF No. 272, alleging the Defendant committed the following additional violations:

| DATE | ACTION |
|---|---|
| December 23, 2023 | Defendant failed to report to LRC for a drug test, claiming that he was busy with recovery meetings and holiday shopping and forgot about testing. |
| December 26, 2023 | Defendant reported for drug testing at LRC. The urine sample was negative but appeared diluted, so a sweat patch was applied to his arm for additional monitoring. He was instructed to return on January 2, 2024, to have the sweat patch removed. |
| January 2, 2024 | Defendant reported to LRC to have the sweat patch removed. Based on a photo taken by the LRC and sent to the probation officer, the sweat patch appeared to have been tampered. The probation officer instructed the staff member to discard the sweat patch because it was not suitable for lab testing. |
| January 8, 2024 | Defendant reported for drug testing, which was presumptive positive for methamphetamine use. He denied using illicit substances, so the sample was sent for lab analysis. Results received on January 22, 2024, confirmed the positive result for methamphetamine. |

---

[7] The acronym stands for Transforming Ourselves through Healing, Growth & Enrichment and is a peer-run support service.

[8] This hearing was later continued to February 1, 2024, to accommodate the court's scheduling needs.

| Date | Description |
|---|---|
| January 19, 2024 | Defendant failed to report for drug testing at LRC and did not contact the probation officer the following day as required to discuss the noncompliance and submit to a make-up drug test. |
| January 23, 2024 | Defendant failed to report for another drug test. He sent the probation officer a message that he forgot about testing because he was too busy with work. The probation officer instructed him to report to the probation office the following day at noon. |
| January 24, 2024 | Defendant reported for a noncompliance meeting. When confronted with the lab results for the January 8 and 19 drug tests, he continued to deny illicit drug use but claimed that he smoked someone's vape, which may have caused him to test positive.<br><br>Defendant reported to LRC later that day for a drug test, which was presumptive positive for methamphetamine. He denied drug use, so the sample was sent for lab analysis. The results were still pending. |
| January 30, 2024 | Defendant failed to report to LRC for drug testing.<br><br>On January 31, 2024, the probation officer sent the Defendant a text message instructing him to report to the probation office at noon that day. The Defendant responded that he was unable to leave work and asked that he report the following day. The probation officer instructed him to report to the probation office prior to his court hearing set for February 1, 2024. |

**N.    Admissions and Detention**

On February 1, 2024, the parties appeared before the court. *See* Mins., ECF No. 273. Ms. Lujan stated that she and the Defendant had not seen the latest supplemental declaration and asked that arguments on disposition be continued so that they can discuss the recent allegations. The court ordered the Defendant to be detained and further ordered the parties to return on February 15, 2024, for answering on the pending allegations and arguments on disposition.

On February 15, 2024, the parties returned to court, and the Defendant entered admissions to the allegations in the Seventh Supplemental Declaration. *See* Mins., ECF No. 274. The parties then presented their argument as to an appropriate sanction for the violations. The Defendant was ordered to remain in detention pending the final disposition hearing. Having reviewed the record herein and considered the parties' positions, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence

that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Pursuant to Section 3583(g), revocation is mandatory if a defendant fails to comply with drug testing or tests positive more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(3) and (4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Seventh Amended Violation Worksheet, the allegations are Grade C violations, with a guidelines range of 6-12 months of imprisonment, based on the Defendant's criminal history category of IV, followed by 16-22 months of supervised release. *See* Seventh Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 272-1.

This is the Defendant's third revocation proceeding. His underlying conviction on Count 2 was a Class C felony, so the Defendant faces a maximum revocation sentence of two years pursuant to Section 3583(e)(3).[9] His prior revocation sentences were for one day, with credit for time served, and approximately six months and five days for the second revocation.

The probation officer recommended a sentence of nine months' imprisonment and 19 months of supervised release. The probation officer noted that the Defendant attempted residential treatment but was terminated from the program for noncompliance with the rules. Because this was his third revocation and based on his numerous violations, the probation officer believed that a graduated sanction was warranted.

Counsel for the United States concurred in the recommendation. The government stated that the court already warned the Defendant there would be consequences for further noncompliance, and the Defendant did not take this seriously. She also argued that the Defendant had "weak excuses" for missing his drug tests and appointments. Ms. San Nicolas argued that a nine-month sentence was fair and equitable because the Defendant's history of compliance was very poor.

---

[9] The Defendant's conviction on Count 3 is a Class E felony, with a maximum revocation sentence of one year imprisonment.

Defense counsel asked that the court impose a sentence of time served. She reminded the court that the Defendant had been doing well prior to the filing of the Seventh Supplemental Declaration and that the probation officer even commented at the November hearing that he was in the best state she had ever seen him. He entered the residential program in July and unfortunately was discharged because he possessed a cell phone, which Ms. Lujan stated was not a "serious violation" like drug use or possession. She argued that the Defendant made great strides from July to December. He was engaged in recovery and outpatient treatment at LRC, he worked as a project assistant at the Guam Coalition Against Sexual Assault, and was engaged in numerous volunteer activities, such as TOHGE. She noted that he was also the secretary for NA and AA meetings, and was the chairperson and group representative for the women's meetings. Ms. Lujan stated that the Defendant was testing negative, maintaining strong family connections and had stable housing. However, in December he began socializing with people he should not have been around, and he did not have the willpower to say "no" to these associates. He did not practice the skills he had learned in treatment and put himself in vulnerable positions and made poor choices repeatedly. Defense counsel asserted that the last 15 days in custody acted as a re-focus and detox period for the Defendant. The time in detention was a very difficult experience. She stated that there were drugs present, but he was able to say no and did not fall into temptation, which is difficult for a recovering addict. He also witnessed two assault incidents while detained. She acknowledged that her request for a time served sentence was substantially less than what the guidelines called for and less than what he received for his last revocation, but she maintained that what the Defendant needed was therapeutic intervention, not more jail time where treatment services were not available. She asked that the Defendant be allowed to return to the community and the treatment services he was receiving, to re-engage in his volunteer work. Ms. Lujan requested that the Defendant be permitted to return to a stable home environment that is free from drugs and violence.

The Defendant addressed the court and admitted he made poor choices. Now that he has experienced recovery and confinement, his choice is to succeed in life and not waste his time in jail. He stated that the treatment classes helped a little bit, but what made the most impact on him was attending meetings and listening to others' experiences. The Defendant said that it really opened his

eyes to realize that there is something more to life than being a drug addict. He acknowledged that he would always be an addict, but he wanted to be the best version of himself and prove that he could turn his life around.

The Defendant has been given numerous chances by the court. His second revocation proceeding was in March 2023, and less than one month later, the probation officer filed two Informational Reports. The court held a series of progress hearings with the Defendant, with the hope that earlier court intervention would help keep him compliant. The court also imposed a four-day "flash" sanction, to address the early violations. Unfortunately, a formal Violation Petition was filed by May 2023, followed by the filing of seven supplemental declarations. The Defendant was given an opportunity to enter the LRC residential treatment program in July, but he was discharged by November for noncompliance with the program's rules. While possession a cell phone may not be considered as serious an offense as drug use or possession to warrant termination from the program, this is just another instance that demonstrates the Defendant's poor decision making. To his credit, after leaving the residential program, the Defendant was continued to engage in outpatient services. He was working and volunteered with several worthy organizations. But his poor choices continued, and by late December he resorted to his old habits. He admits that he associated with other drug users and could not say no when tempted. The Defendant says he wants to turn his life around and be the best version of himself, but his actions say otherwise. The court is cognizant that relapse is the rule – not the exception – in addiction recovery. Nevertheless, instead of readily admitting he relapsed so that the probation officer can help him work through the trigger and develop healthy coping skills, the Defendant was not forthright and made excuses. The Defendant now readily admits that his addiction is a lifelong battle, but with treatment, the Defendant can hopefully learn from this mistake and gain more tools to prevent relapsing in the future. The Defendant has demonstrated that he can be compliant for long periods when actively engaged in treatment, and he deserves another chance from the court, particularly because he was a contributing member of society through his employment and volunteer services. The alternative is a longer prison sentence, and the six-month revocation sentence the Defendant received last time did not make him any less of an addict when he got out because he received no substance abuse treatment while incarcerated.

It is in society's best interest to get the Defendant back into treatment within a reasonable period.

Having heard the parties' positions and based on the record before it, the court recommends a sentence of time served, followed by 24 months of supervised release. Based on his history, the Defendant is in need of more intensive substance abuse treatment, and hopefully he can get back into the LRC residential program upon his release. The court believes the recommended sentence is reasonable, provides just punishment and affords adequate deterrence.

### RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the Chief Judge (1) accept the Defendant's admissions to all the violations noted above, (2) revoke the Defendant's supervised release term and (3) sentence him to time served,[10] followed by 24 months of supervised release.

A disposition hearing shall be held on May 9, 2024, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



**/s/ Michael J. Bordallo**
    **U.S. Magistrate Judge**
**Dated: Apr 12, 2024**

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

---

[10] The Defendant was detained from April 27-30, 2023, then again from May 18, 2023 to June 9, 2023, and finally from February 1, 2024, to present. By the time of the proposed disposition hearing, the Defendant will have about 125 days of confinement credit.